IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| DOUGLAS A. MOTTRAM, *et al.*, Plaintiffs, vs. ROBERT RADKE, *et al.*, Defendants. | Case No. 25-cv-00045-DKW-WRP **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO DISQUALIFY EXPERT WITNESS** |

On March 17, 2026, Plaintiffs Douglas and Amy Mottram, and the Mottram Family Trust ("the Mottrams"), moved to disqualify Defendant Robert Radke's expert witness Ross R. Murakami for failure to meet the requirements of Federal Rule of Civil Procedure 702. Dkt. No. 141. The motion has been fully briefed, *see* Dkt. Nos. 176 & 181, and argued, Dkt. No. 182. For the reasons that follow, the motion is GRANTED IN PART and DENIED IN PART.

## RELEVANT BACKGROUND

This case involves a contract dispute between the Mottrams and Radke. Dkt. No. 66. Prior to 2018, the Mottrams entered into four joint ventures with Radke, in which Radke would buy land in California, on which the Mottrams would construct homes to be resold for mutual profit. *Id.* ¶¶ 7–21; ECF No. 12 ¶ 11. Beginning in 2018, the Mottrams and Radke decided to pursue a similar strategy in Kauai,

purchasing two plots of land ("Lot C" and "Lot D") using funds from both parties. ECF No. 12 ¶¶ 14–20. The parties did not enter into a written contract for this Kauai joint venture, and, perhaps predictably, its exact nature and terms are in dispute. What is clear is that by 2023, the business relationship between the Mottrams and Radke had disintegrated due to, *inter alia*, conflict over the division of profits from Lot D, personal usage of the Kauai properties, and the Mottrams' alleged siphoning of funds for a separate project with a third-party. *Id*. ¶¶ 74, 94–98; Dkt. No. 66 ¶ 55.

On March 17, 2026, the Mottrams filed the instant motion, asserting that the Court should disqualify Radke's proffered expert witness, Murakami, on the grounds that his expert opinions failed to meet the standards of Federal Rule of Evidence 702. Dkt. No. 141. The Mottrams argue that Murakami improperly relied on inadmissible information contained in a settlement offer the Mottrams made to Radke during mediation. Dkt. No. 141-1 at 9–11. They also assert that Murakami relied on two inaccurate pieces of data to form his conclusions: Radke's supposed lack of awareness of the Mottrams' use of Lot D sale proceeds to invest in Hula Housing Development, LLC ("HHD"), *id*. at 11–14, and Radke's entitlement to lost rent for periods in which the Mottrams personally used Lot C, *id*. at 14–17. Finally, the Mottrams argue that Murakami has not identified any reliable methodology underlying his report, nor has he shown that he reliably applied principles and methods to the facts of the case. *Id*. at 17–26.

Radke opposes the motion, responding that Murakami meets the requirements of Rule 702. Dkt. No. 176. To the extent that Murakami relied on information from a settlement offer, experts are permitted to use inadmissible evidence in forming conclusions. *Id*. at 21–23. Murakami also adhered to professional standards, and the Mottrams failed to identify any specific reason that his methodology was lacking. *Id*. at 23–25. The Mottrams replied, substantially repeating their arguments that Murakami did not utilize a reliable accounting methodology and improperly relied on inadmissible or inaccurate data. Dkt. No. 181.

On June 1, 2026, the Court held a hearing on the motion to strike and heard oral argument. Dkt. No. 182. This Order follows.

## STANDARD OF REVIEW

The admissibility of expert opinions is governed by Rule 702. *See Clausen v. M/V New Carissa*, 339 F.3d 1049, 1055 (9th Cir. 2003). Experts may offer testimony based on their "knowledge, skill, experience, training, or education" if they meet the following requirements: (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) "the testimony is based on sufficient facts or data"; (3) "the testimony is the product of reliable principles and methods"; and (4) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

A court has "broad discretion" to exclude or admit expert opinions. *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980). In general, "[d]isqualification of an expert witness is a drastic measure that courts should impose only hesitantly, reluctantly, and rarely." *Multimedia Pat. Tr. v. Apple Inc.*, No. 10-CV-2618-H (KSC), 2012 WL 12868248, at *2 (S.D. Cal. Aug. 27, 2012) (internal quotation marks omitted).

The admissibility of expert reports is evaluated under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). "Under *Daubert*, the district court judge must ensure that all admitted expert testimony is both relevant and reliable." *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 984 (9th Cir. 2020) (internal quotation marks omitted). "The inquiry is flexible and Rule 702 should be applied with a liberal thrust favoring admission." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (internal quotation marks and citations omitted).

## DISCUSSION

The Mottrams argue that Murakami should be disqualified as an expert witness on three grounds: (1) Murakami improperly relied upon Rule 408 materials in preparing his opinions; (2) Murakami further relied on inaccurate data that is inconsistent with the record; and (3) Murakami did not ground his opinion in a reliable methodology. The Court addresses each below.

## I.    Rule 408

The Mottrams argue that Murakami's expert report relies in part on information provided during settlement negotiations in violation of Rule 408. Specifically, Murakami cites to an estimated cost of $2,517,197 to build a house on Lot D. Dkt. No. 141-6 at 9. Murakami relied on this figure to conclude that the actual cost of the construction on Lot D differed from what Mottram reported to the IRS, and that Mottram pocketed the profits of this difference without "shar[ing] any of the gain with Radke." *Id*. at 9–10. This spreadsheet, however, was originally disclosed to a mediator in aid of the parties' settlement discussions. *See* Dkt. No. 141-9 at 6. Murakami acknowledges in his report that the cost figure derived from a spreadsheet prepared by Doug Mottram, Dkt. No. 141-6 at 9, but testified during his deposition that he had not been informed that the spreadsheet was provided by the Mottrams in aid of a settlement offer, Dkt. No. 141-7 at 22–23.

The Mottrams argue that the portions of Murakami's report that rely upon the spreadsheet, namely Tables 7, 8, and 14 of Section III, should be excluded under Rule 408. Rule 408 is clear in stating that "a statement made during compromise negotiations" cannot be used to "prove or disprove the validity or amount of a disputed claim." The spreadsheet, prepared and provided as it was for the purposes of settlement, and used by Murakami to support his damages opinions, is unambiguously protected by Rule 408.

Radke's argument that experts can rely on otherwise inadmissible evidence to form their conclusions is unavailing. "If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted"—that much is true. Fed.R.Civ.P. 703. But while Rule 703 permits "experts *some* leeway in basing their opinions on inadmissible evidence," *Asetek Danmark A/S v. CoolIT Sys. Inc.*, No. 19-CV-00410 (EMC), 2022 WL 21306657, at *20 (N.D. Cal. Oct. 4, 2022) (cleaned up)(emphasis added), courts have determined that it cannot be used to admit evidence excluded by Rule 408. *See Bluetooth SIG, Inc. v. FCA US LLC*, 468 F. Supp. 3d 1342, 1348 (W.D. Wash. 2020) (excluding expert testimony "to the extent that it relies on information received as part of settlement negotiations"); *Leading Mfg. Sols., LP v. Hitco, Ltd.*, No. 15-CV-1852 (LAB)(PCS), 2017 WL 1336939, at *2 (S.D. Cal. Mar. 24, 2017) (noting that "even though expert witnesses can rely on inadmissible evidence, allowing the expert to rely on evidence excluded under Rule 408 and testify on that basis amounted to use of that evidence at trial"). Ruling otherwise would effectively punish the Mottrams for having participated in good faith settlement negotiations and would run "contrary to the purpose and spirit of Rule 408." *Fujitsu Ltd. v. Belkin Int'l, Inc.*, No. 10-CV-03972 (LHK), 2012 WL 5835741, at *6 (N.D. Cal. Nov. 16, 2012).

During oral argument, Radke's counsel proposed that Murakami be permitted to amend the portions of his report that rely on the spreadsheet. The Court declines to open that window. Put simply, a party is not entitled to correct a problem of their own making, particularly one so glaring as a violation of Rule 408. *See Rojas v. Marko Zaninovich, Inc.*, No. CIV-F-09-0705 (AWI), 2011 WL 6671737, at *5 (E.D. Cal. Dec. 21, 2011) (holding that a party is "not automatically entitled to correct [an] expert report"); *United States v. 14.3 Acres of Land, more or less, situated in San Diego Cnty., Cal.*, No. 07-CV-886-W (NLS), 2009 WL 249986, at *2 (S.D. Cal. Jan. 30, 2009) (noting that the ability to supplement or correct an expert disclosure "does not give license to sandbag one's opponent"). Radke will have the opportunity to address this issue at trial, during cross-examination.

Accordingly, the motion is granted with respect to Tables 7, 8, and 14 of Section III of Murakami's expert report, and those portions are therefore excluded to the extent they rely on the Rule 408 material.

## II.    Insufficient Facts

The Mottrams next argue that Murakami's opinions should be excluded because he relies upon inaccurate interpretations of the record. Dkt. No. 141-1 at 17. They cite two opinions in particular: that the Mottrams did not inform Radke about having invested the proceeds from a land sale in HHD, and that Radke was entitled to lost rent during periods in which the Mottrams used the home on Lot C.

The Mottrams claim that both opinions failed to account for contradictory facts in the record and instead relied on mere assumptions provided by Radke's counsel; therefore, they are not based on sufficient facts and data for the purposes of Rule 702. *Id*. at 11–17.

The Mottrams' arguments for exclusion misunderstand the Court's role. "Rule 702's 'sufficient facts or data' element requires foundation, not corroboration," and "does not license a court to engage in freeform factfinding, to select between competing versions of the evidence, or to determine the veracity of the expert's conclusions at the admissibility stage." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1025 (9th Cir. 2022). "The court's role is to determine 'the scientific validity' of an expert's 'principles and methodology,' not to determine whether their hypothesis is correct, or to evaluate whether it is corroborated by other evidence on the record." *Id*. at 1026 (quoting *Daubert*, 509 U.S. at 594–95).

At this stage of the case, and having already denied summary judgment on certain issues, it is clear that there are many factual disputes between the parties. This, no doubt, is the product of their decision not to memorialize their business arrangement in writing. The Court's role is not to resolve these factual disputes— that is the responsibility of the trier of fact at trial. Nor is it the task of the Court to make credibility findings, to weigh the accuracy of Murakami's expert opinions, or to determine if his conclusions are correct. *See Alaska Rent-A-Car, Inc. v. Avis*

*Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) ("Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but . . . is not tasked with deciding whether the expert is right or wrong").

The Mottrams cite to evidence in the record to disprove the facts on which Murakami bases his opinions, but "[d]isagreeing with an expert's conclusions and the purported basis provided for them is not a valid reason for excluding expert testimony." *SPS Techs., LLC v. Briles Aerospace, Inc.*, No. 18-CV-9536 (MWF)(ASX), 2021 WL 4913509, at *7 (C.D. Cal. Sept. 8, 2021); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 978 F. Supp. 2d 1053, 1074 (C.D. Cal. 2013) (holding that an expert's "opinions need not be proven correct to be admissible"). "Reliance on assumptions provided by counsel likewise does not bar expert testimony." *Grant v. Wells Fargo*, No. 24-CV-05628 (MWC)(PVC), 2025 WL 3642084, at *4 (C.D. Cal. Oct. 30, 2025). Similarly, to the extent that the Mottrams argue that Murakami relied on insufficient facts because he failed to include unfavorable information in the record, that too is not grounds to exclude. *See Sportspower Ltd. v. Crowntec Fitness Mfg. Ltd.*, No. 17-CV-02032 (JLS)(KES), 2020 WL 3213704, at *5 (C.D. Cal. Feb. 3, 2020) ("But the fact that an expert does not incorporate the entire universe of relevant data and information into his opinion does not render it inadmissible, as

*Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness." (internal quotation marks omitted)).

The Court takes no position as to whether the Mottrams are correct in arguing that there is evidence contradicting Murakami's opinions, precisely because doing so at this time is unnecessary and contrary to the Court's assigned role.  *Elosu*, 26 F.4th at 1025.  In this instance, the Mottrams' arguments "go to the weight of the testimony and its credibility, not its admissibility," *Alaska Rent-A-Car*, 738 F.3d at 970.  These arguments should be pursued "by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."  *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010); *see also SPS Techs.*, 2021 WL 4913509, at *2 ("Challenges to the factual basis of the expert's opinion rather than the methodology upon which it is based, particularly when the facts are subject to reasonable dispute where, as here, there is sufficient basis for disagreement, go to the weight of the expert's opinion, not the admissibility.").  The Mottrams' request to exclude Murakami's opinions on the grounds of insufficient or inaccurate facts is therefore denied.

## III.    Reliability

The Mottrams further argue that Murakami should be disqualified because his opinions were not the "product of reliable principles and methods" pursuant to Rule 702(c).  Dkt. No. 141-1 at 17.  The Court disagrees.

Rule 702 requires courts to ensure that expert testimony "is not only relevant, but reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999). "Expert opinion testimony . . . is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565 (internal quotation marks and footnote omitted). In *Daubert*, the Supreme Court outlined several factors for courts to consider in determining if an expert's methodology was reliable, such as whether the methodology has a known error rate or has been subjected to peer review. 509 U.S. at 593–94. However, "these factors are most relevant to scientific testimony," *Cybergun, S.A. v. Jag Precision*, No. 12-CV-00074 (APG)(GW), 2014 WL 7336073, at *1 (D. Nev. Dec. 19, 2014), and "are not applicable to . . . testimony[] whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000). "In such cases, the inquiry may cover whether the expert's experience supports the expert's conclusions; whether the expert's reasoning is circular, speculative, or otherwise flawed; or whether the expert's reasoning is adequately explained." *United States v. Holguin*, 51 F.4th 841, 855 (9th Cir. 2022) (internal citations omitted). Ultimately, the Court has "discretion to decide how to test an expert's reliability as well as whether the testimony is reliable . . . based on the particular circumstances of the particular case." *Primiano*, 598 F.3d at 563.

The Mottrams argue that Murakami was unable to identify or utilize any reliable accounting standards or authorities supporting his methods. The Mottrams cite to various points in Murakami's deposition where Murakami declined to specify a particular "set of standards" used in his analysis, Dkt. No. 141-7 at 7; answered that there was "no accounting standard" to conclude that a difference in capital gain might be residual joint venture cash, *id*. at 18–19; and that there were uncertainties behind some of the numbers included in his expert report, *id*. at 23.

Radke, on the other hand, argues that Murakami abided by professional standards in his analysis and that, beyond this, the field of forensic accounting does not have a single, uniform methodology to which he should have adhered. Dkt. No. 176 at 23–25. In his declaration, Murakami states that he performed his work in conformity with the general standards of the American Institute of Certified Professional Accountants ("AICPA"), Dkt. No. 176-1, which mandate professional competence and care, adequate planning and supervision, and reliance on sufficient relevant data to form conclusions, Dkt. No. 176 at 24–25. Radke asserts that, having obeyed these standards, Murakami's opinions are sufficiently reliable. *Id*.

To begin, the Court agrees with Radke that Murakami's expert opinions are not rooted in scientific evidence, given that forensic accounting is a specialized field in which factors like error rates or peer review are not accepted indicators of reliability. *See In re Packaged Seafood Prods. Antitrust Litig.*, No. 15-MD-2670

(DMS)(MSB), 2024 WL 1269863, at \*2 (S.D. Cal. Mar. 25, 2024) (holding that testimony of forensic accountant experts "do not entail scientific evidence but are based on specialized knowledge in the field of forensic accounting"). Accordingly, the focus of the reliability inquiry "depends heavily on the *knowledge and expertise* of the expert, rather than the methodology or theory behind it." *Hangarter v. Provident Life*, 373 F.3d 998, 1017 (9th Cir. 2004) (emphasis in original). The Mottrams here do not dispute Murakami's qualifications, knowledge, or experience—rather, their arguments focus purely on what they see as a lack of reliable standards.

It is true that, regardless of whether the expert's conclusions rely on scientific evidence, there must still be "reasoning or methodology underlying the testimony." *United States v. Valencia-Lopez*, 971 F.3d 891, 900 (9th Cir. 2020) (internal quotation marks omitted). The Court is not convinced, however, by the Mottrams' arguments. The Mottrams go too far in asserting that Murakami's deposition testimony is proof of a lacking methodology. Murakami testified that there was not a single "professional standard" for calculating certain figures in his analysis, Dkt. No. 176-7 at 19, but—as Radke argues—that is merely a result of forensic accounting not having universal, scientific standards in the same way as other fields of expertise. Notably, the Mottrams do not provide any alternative principle or standard Murakami failed to follow—although they were not obliged to do so, this

is suggestive that no such uniform methodology exists.  As for the argument that Murakami's uncertainties regarding some of his conclusions suggest a lack of reliable method, "[l]ack of certainty is not, for a qualified expert, the same thing as guesswork." *Primiano*, 598 F.3d at 565.  To the extent that the Mottrams take umbrage with those ambiguities or Murakami's other conclusions, they will have the chance to explore those issues on cross examination.  *See Fair v. King Cnty.*, No. 21-CV-01706 (JHC), 2025 WL 1031274, at *8 (W.D. Wash. Apr. 7, 2025) (holding that "flaws in the underlying data used to form [an expert's] opinion goes to the weight . . . rather than the admissibility of his testimony")

Finally, the Mottrams also assert that Murakami did not apply his methodology reliably because "Radke's counsel instructed Murakami to assume that Radke's share of the profits should be based on his share of capital contributions," which the Mottrams argue was a flawed understanding of the case.  Dkt. No. 141-1 at 24–26.  Again, however, whether to exclude an expert does not depend on the "correctness of the expert's conclusions," *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir.2007) (quotation omitted), and Murakami's reliance on an assumption provided by counsel does not offer a basis to find he applied his methodology unreliably, *see Grant*, 2025 WL 3642084, at *4.  If the Mottrams believe that such an assumption undermines Murakami's credibility, they may present that argument to the jury at trial.

In sum, given the obligation to apply Rule 702 with a "liberal thrust favoring admission," *Wendell*, 858 F.3d at 1232, the Court finds that Murakami's expert opinions have demonstrated sufficient reliability, and the Mottrams' motion to disqualify on those grounds is denied.

## CONCLUSION

For the reasons set forth herein, the Mottrams' Motion to Disqualify Expert Witness, Dkt. No. 141, is GRANTED IN PART. Tables 7, 8, and 14 of Section III of Murakami's expert report are excluded to the extent they incorporate Rule 408 material. The remainder of the motion is DENIED.

IT IS SO ORDERED.

DATED: June 16, 2026 at Honolulu, Hawai'i.



Derrick K. Watson
Chief United States District Judge

*Douglas A. Mottram, et al v. Robert Radke, et al*; Civil No. 25-00045 DKW-WRP;
**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
MOTION TO DISQUALIFY EXPERT WITNESS**